## Case No. 1,818.

### In re BRAY.

[2 N. B. R. (1868) 139 (Quarto, 53); 1 Chi.
Leg. News, 30.][1]

### District Court, D. Kentucky.

BANKRUPTCY—REGISTER—WHAT QUESTIONS MAY
BE CERTIFIED.

It is not proper to certify to the judge points
or questions that do not properly arise in the
course of the proceedings before the register,
as the opinion of the judge cannot be asked in
that way.

[Cited in Re Haskell, Case No. 6,191.]

[In bankruptcy. The following questions
were certified by the register:]

"Is a judgment in favor of the United
States against the bankrupt for a fine, in de-
fault of the payment of which he is now con-
fined in jail, a debt from which 'a discharge
in bankruptcy would release him,' and is the
said bankrupt now entitled to be released
from imprisonment, during the pendency of
proceedings in bankruptcy, upon his peti-
tion?"

The attorney of the bankrupt, J. R. Thom-
as, insists that a judgment for a fine is sim-
ply a judgment debt which can be collected
only on execution in the common form of
law, and, therefore, that it is such a debt as
the bankrupt will be discharged from paying
when he secures his final discharge in bank-
ruptcy; and, therefore, that he is now enti-
tled to be released from imprisonment. He
relies on the thirty-fourth and thirty-fifth
sections of the bankrupt act [Act 1867; 14
Stat. 533, 534], and on the second section of
the act entitled "An act concerning pardons
and remissions of penalties," approved Feb-
ruary 20, 1863 [12 Stat. 657].

The opinion of the register is adverse to
bankrupt.

BALLARD, District Judge, said, "I am of
opinion that the questions certified are not
'points or questions arising in the course of
the proceedings,' before the register or upon
the result of such proceedings, and that,
therefore, the opinion of the district judge
upon them cannot be asked in this way. I
decline to express an opinion on either of
the questions certified."

---

## Case No. 1,819.

### BRAY et al. v. The ATALANTA.

[Bee, 48.][2]

District Court, D. South Carolina. Sept. 22,
1794.

SEAMEN—WAGES—INTERRUPTION OF VOYAGE—
FORFEITURE—IMPRISONMENT.

1. If a voyage be interrupted without the
fault of the crew they shall receive wages dur-

[1] [Reprinted from 2 N. B. R. 139 (Quarto, 53),
by permission. Syllabus, only, given in 1 Chi.
Leg. News, 30.]
[2] [Reported by Hon. Thomas Bee, District
Judge.]

ing the time they work on board the vessel in
port.

[Cited in Joy v. Allen, Case No. 7,552; Hoff-
man v. Yarrington, Id. 6,580; The Heroe,
21 Fed. 528.]

[See The Maria, Case No. 9,074; Hindman v.
Shaw, Id. 6,514; The Hudson, Id. 6,831;
Hussey v. Fields, Id. 6,947; The Page, Id.
10,660.]

2. The act of congress for the regulation of
merchant seamen must be strictly followed, it
being penal. If the mariners suffer imprison-
ment under the 7th clause of that act, they
shall not also forfeit wages under the 5th
clause.

[Cited in Sherwood v. McIntosh, Case No.
12,778; Brower v. The Maiden, Id. 1,970.]

In admiralty.

This is a libel for wages. The ship was
bound on a voyage to Liverpool and back;
the actors shipped at different times in the
month of June last, and signed articles with
Captain Wilson to proceed on the voyage.
On the 4th July the ship attempted to pass
the bar, but struck, and made so much wa-
ter, in consequence, as to be forced back to
Charleston. This took place on the 29th
July; and on the 2d August, Captain Wilson
left the ship. On the 5th Captain Hazard
took command of her, on which all the men
quitted her, and went on shore: some of the
crew, however, returned and went to work
under the new captain. The others, among
whom were several of these actors, were
taken up and sent to jail under the 7th sec-
tion of the act of congress for the regulation
of seamen. [1 Stat. 134.] They applied to
this court for a discharge, suggesting that
the ship was unfit for sea, and requested a
survey. This was ordered, and they were
directed to return on board and do their
duty. On the day following, they went on
board and carried the vessel up to Gadsden's
wharf. From the logbook it appears that
they remained on board, more or less, until
the 24th of August, when they all left the
ship, and have not since returned. It ap-
pears also by the logbook that the seamen
were dissatisfied at several times, and though
no reason is assigned, yet it appears from a
letter of the owners that upon their insist-
ing that the vessel should go to sea, the men
refused to proceed in her.

Three circumstances have been stated as
material in all contracts with seamen. 1st.
That the vessel be sound. 2d. That the
captain be known to them, and one on whom
they may depend for their wages. 3d. That
the voyage be certain and defined.

It is contended that, in this case, the two
first requisites fail; that the seamen are no
longer bound by their articles; and that
their wages are due. That they are not
within the act of congress. That a change
of captain is a breach of the articles, and
that an equitable construction should be
given to the contracts of seamen. Hopkin-
son, 122 [Brice v. The Nancy, Case No. 1,855].

It is clear that this vessel is not seaworthy.